**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | | |
|---|---|---|
| JACK HURST | ) | |
| PLAINTIFF | ) | |
| V. | ) | Civil Action No.  3:26-cv-210-RGJ |
| | ) | _____ |
| CITY OF MOUNT WASHINGTON, | ) | |
| CODE ENFORCEMENT OFFICER | ) | |
| DON COFFMAN, | ) | |
| CODE ENFORCEMENT DIRECTOR | ) | |
| ANTHONY BRANHAM, | ) | |
| OFFICER MIKE SMITH, | ) | |
| MAYOR STUART OWEN | ) | |
| DEFENDANTS | ) | |

---

**COMPLAINT**
**FOR VIOLATION OF CIVIL RIGHTS**
**(42 U.S.C. § 1983)**

**I. PRELIMINARY STATEMENT**

1. This action arises from the City of Mt. Washington's sustained campaign of retaliation, selective code enforcement, warrantless property invasions, and uncompensated takings directed at Plaintiff Jack Hurst after he criticized and exposed corruption in the City's permitting and code-enforcement practices, in violation of 42 U.S.C. § 1983.  See generally *Monell v. Dep't of Soc. Servs*., 436 U.S. 658 (1978).

2. Acting through its City Council, Mayor, City Attorney, Police Department, and Code Enforcement Division, the City used its regulatory and police powers to punish Hurst for filing suit, speaking publicly at a City Council meeting, and reporting a "pay-for-permits"

scheme to federal authorities, in violation of the First, Fourth, Fifth, and Fourteenth Amendments.

3. The City's actions—including warrantless destruction of construction materials, a multi-year pattern of selective and unwritten code demands, and the deployment of armed police officers to a civil deposition—constitute municipal policies, customs, and ratified practices within the meaning of Monell and its Sixth Circuit progeny.  See, e.g., *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986); *Wright v. City of Euclid*, 962 F.3d 852 (6th Cir. 2020).

4. Plaintiff seeks damages, declaratory relief, and narrowly tailored injunctive relief to prevent further retaliation and unlawful interference with his property and development activities.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 and 1343.

6. Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in Bullitt County, Kentucky, within this District.

7. Defendant City of Mt. Washington is a Kentucky municipal corporation located in Bullitt County and is a "person" subject to suit under 42 U.S.C. § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. at 690–91.

2

## III. PRIOR STATE PROCEEDINGS AND
## THE NEED FOR A FEDERAL FORUM

8. In 2022, Plaintiff brought Hurst v. City of Mt. Washington, Bullitt Circuit Court Case No. 22-CI-00090, challenging the City's arbitrary and inconsistent application of its permitting ordinances to his projects.

9. When Plaintiff sought leave to amend that complaint to add the federal civil-rights claims asserted here, the Bullitt Circuit Court denied leave without explanation, notwithstanding Kentucky Rule of Civil Procedure 15.01 and the liberal amendment standard articulated in *Foman v. Davis*, 371 U.S. 178, 182 (1962).

10. Plaintiff also became a party to a related code-enforcement matter in Bullitt District Court, Case No. 23-CI-01389, which concerned alleged ordinance violations on his development projects; those proceedings remained focused on local ordinance compliance and did not address the federal constitutional theories pled in this Complaint.

11. Plaintiff does not seek review or reversal of any state-court judgment; rather, he brings independent federal damages and equitable claims that could not be heard in those cases because he was not permitted to assert them. This action therefore does not implicate the Rooker-Feldman doctrine. See *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

12. Under *Knick v. Township of Scott*, 588 U.S. 180, 186–89 (2019), and settled § 1983 doctrine, Plaintiff is entitled to press his federal constitutional claims in federal court notwithstanding ongoing or prior state proceedings, and he need not exhaust state remedies before bringing federal takings claim.

## IV. TIMELINESS AND CONTINUING COURSE OF CONDUCT

13. Federal civil-rights claims in Kentucky are governed by a one-year statute of limitations borrowed from Kentucky's general personal-injury limitations statute.

14. From 2022 through at least April 30, 2025, the City engaged in a continuous, connected course of retaliatory and discriminatory conduct directed at Plaintiff, including: (a) warrantless property invasions and destruction of materials; (b) escalating selective and unwritten code demands; and (c) culminating armed police intimidation at a civil deposition noticed in ongoing litigation against the City. See, e.g., *Sharpe v. Cureton*, 319 F.3d 259, 267–69 (6th Cir. 2003); *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 521–22 (6th Cir. 1997).

15. The most recent acts—including the April 30, 2025, deposition intimidation and continuing selective enforcement into 2024–2025 occurred within one year of this filing and independently satisfy all elements of Plaintiff's First Amendment and equal-protection claims. See *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

16. Earlier events, including the 2022 entries and destruction of property, form part of the same ongoing pattern and are pled both as separate claims (where timely and preserved by state-law limitations) and as background evidence of the City's retaliatory motive and longstanding policies and customs. See *Sharpe v. Cureton*, 319 F.3d at 268-69.

## V.  PARTIES

17. Plaintiff Jack Hurst is a citizen of Kentucky who resides in Nelson County and conducts residential real-estate development in Mt. Washington through entities he controls.

4

18. Defendant City of Mt. Washington is a municipal corporation organized under Kentucky law that operates a Police Department and a Code Enforcement Division and enforces zoning and building regulations through its officers and employees.

## VI. FACTUAL ALLEGATIONS

### A. Plaintiff's Protected Activity

19. In early 2022, Plaintiff filed suit in Bullitt Circuit Court (Case No. 22-CI-00090) challenging Mt. Washington's arbitrary and inconsistent application of its permitting ordinances to his projects. Filing and pursuing litigation is protected First Amendment petitioning activity. See *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510–11 (1972).

20. On November 14, 2022, during a regularly scheduled public meeting, Plaintiff addressed the Mt. Washington City Council and Mayor regarding corruption in the City's Code Enforcement Division, specifically alleging that Code Enforcement Officer Don Coffman participated in a "pay-for-permit" scheme. Speech at an open council meeting on matters of public concern is core First Amendment expression. See *Connick v. Myers*, 461 U.S. 138, 145 (1983); *City of Madison Joint Sch. Dist. No. 8 v. Wis. Emp't Relations Comm'n*, 429 U.S. 167, 174–75 (1976).

21. Plaintiff and another individual, Kevin Brummley, reported this scheme to the Internal Revenue Service; the IRS investigated and later issued a whistleblower award to Mr. Brummley based on tax losses recovered, thereby corroborating the substance of the corruption allegations.

22. The Mayor reacted dismissively to Plaintiff's public complaints, and the City Council took no steps to investigate, discipline Coffman, or alter code-enforcement practices; Coffman remained in his position and continued to oversee Plaintiff's projects.

**B. August–September 2022 Warrantless Entries and Destruction**

23. In August 2022, City officials and contractors entered Plaintiff's "The Woods" construction site without a warrant, consent, or exigent circumstances and destroyed a large concrete drain tile and other construction materials using heavy equipment in Plaintiff's presence.

24. When Plaintiff demanded to see legal authority for the entry and seizure, Code Enforcement Director Anthony Branham threatened to "have them come out and get you" and Mt. Washington Police Officer Mike Smith declined to intervene or produce any warrant, instead ordering Plaintiff to stop recording the incident.

25. In September 2022, City contractors entered Plaintiff's "The Terrace" development without prior notice or process and used machinery to destroy freshly poured concrete footings.

26. These warrantless entries and destruction of property occurred immediately following Plaintiff's protected activity—his state-court lawsuit and public criticism of City officials—and demonstrate the City's pattern of using its regulatory and police powers to punish and intimidate Plaintiff for exercising his constitutional rights.

**C. Escalating Selective and Retaliatory Code Enforcement (2022–2025)**

27. After Plaintiff's 2022 lawsuit, Council speech, and IRS report, the City subjected his projects to heightened scrutiny and selectively imposed unwritten and more onerous standards than those applied to similarly situated developers.

28. From 2022 through 2025, Plaintiff experienced: (a) arbitrary, unexplained permitting delays; (b) demands to comply with unwritten conditions, including a "firewall requirement" not contained in any published ordinance or state code; and (c) redundant inspections and extraordinary scrutiny of routine work.

29. Fischer Homes, a large developer constructing residential units in Mt. Washington, was not subjected to these same unwritten "firewall" demands, repeated inspections, or comparable permitting delays.

30. When Plaintiff requested documentation showing that Fischer Homes had been required to meet the same firewall standards, the City abruptly withdrew its firewall demands without explanation, tacitly conceding that these requirements had been selectively imposed on Plaintiff alone.

31. There was no legitimate technical, safety, or planning reason to single out Plaintiff's development for this disparate treatment; the differential enforcement was motivated by animus arising from his prior lawsuit, public criticism, and whistleblowing. See *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) (per curiam).

**D. Armed Police Intimidation at the April 30, 2025 Deposition**

32. On April 30, 2025, in connection with his Bullitt Circuit litigation, Plaintiff took the deposition of Code Enforcement Officer Coffman at Mt. Washington City Hall, a location chosen by the City.

33. During the deposition, three armed Mt. Washington police officers were present in the building, and at least one entered or positioned himself at the doorway of the deposition room, where their presence was visible to Plaintiff, his counsel, and the court reporter.

34. No credible security concern justified this deployment: the deposition involved a civil dispute, all participants were identified officers of the court, the session was recorded, and any disruption could have been addressed through the presiding judge rather than armed officers.

35. Before the deposition began, Coffman was overheard asking, "Are they here?".  A statement that together with the timing and context, supports the inference that the officers' presence was pre-arranged to support Coffman and intimidate Plaintiff.

36. Plaintiff's counsel and the court reporter observed and later attested that the police presence was unusual in their experience and had a chilling, intimidating effect on the proceedings.

37. In light of the City's prior pattern of retaliatory enforcement and warrantless property destruction, the deliberate deployment of armed officers at a civil deposition would deter a person of ordinary firmness from continuing to pursue litigation and associated First Amendment activity. See *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002).

**E. Uncompensated Public Infrastructure and the City's Enrichment**

38. Between 2021 and 2022, at the City's request and in reliance on City representations, Plaintiff constructed sewer lines, stormwater facilities, and road bases at his

own expense for use as public infrastructure serving his developments and the broader community.

39. The City accepted, now operates, and maintains these facilities as part of its public infrastructure system but has refused to compensate Plaintiff or honor any reimbursement mechanism, despite the roughly $300,000 in costs he incurred.

40. The City's retention and operation of these improvements as public facilities without compensation constitutes an uncompensated taking for public use within the meaning of the Fifth Amendment. See *Knick v. Township of Scott*, *Pennsylvania, et al.* 588 U.S. at 186–89.

## VII. MUNICIPAL LIABILITY UNDER MONELL

41. Plaintiff's federal claims are asserted against the City of Mt. Washington under *Monell v. Department of Social Services*, 436 U.S. at 690–95, because the constitutional violations described above were caused by (a) official policies or decisions of final policymakers; (b) longstanding customs or practices; and (c) deliberate indifference in training, supervising, and disciplining City personnel.

**A. Policies and Decisions by Final Policymakers**

42. The Mt. Washington City Council and Mayor are final policymakers for City legislative and enforcement policy, including code-enforcement priorities and responses to citizen complaints about City officials. See *Pembaur v. City of Cincinnati,* 475 U.S. at 480–83.

43. By declining to investigate or discipline Coffman following Plaintiff's Council testimony and the IRS whistleblower award, and by continuing to rely on Coffman and

9

Branham to enforce codes against Plaintiff, the Council and Mayor ratified Coffman's conduct and effectively adopted a retaliatory enforcement posture toward Plaintiff as official City policy. See *Wright v. City of Euclid*, 962 F.3d at 882–83.

44. The Mayor, City Attorney, and Police Chief acted as final policymakers with respect to directing or approving warrantless entries onto Plaintiff's property, the use of City contractors to destroy his materials, and the deployment of armed officers to the April 30, 2025, deposition.

**B. Customs and Practices**

45. Independently of formal policies, the City maintained customs and practices of: (a) using police presence in civil proceedings to support City witnesses and intimidate opponents; and (b) selectively using unwritten code requirements against disfavored developers.

46. The absence of any internal investigation or corrective action after the 2022 warrantless entries, despite Plaintiff's immediate objections and subsequent state-court litigation, further reflects a custom of tolerating unconstitutional entries and seizures in the code-enforcement context.

47. The April 30, 2025, deposition intimidation, occurring at City Hall with City leadership's knowledge and with no legitimate security basis, illustrates the City's custom of using its police force to reinforce code-enforcement staff and send a message to litigants who challenge City practices.

**C. Deliberate Indifference in Training, Supervision, and Discipline**

48. The City failed to adequately train and supervise its police officers and code-

enforcement personnel regarding: (a) the Fourth Amendment warrant requirement for non-consensual entries onto private property; (b) the prohibition on retaliatory and selective enforcement based on protected speech; and (c) the improper use of police presence to intimidate participants in civil proceedings.

49. The combination of Plaintiff's state-court lawsuit, his Council testimony and IRS report, and the 2022 entries provided actual notice to policymakers that additional training and discipline were necessary to prevent constitutional violations.

50. The City's conscious choice not to provide such training or impose discipline, despite this notice, amounts to deliberate indifference under *City of Canton v. Harris*, 489 U.S. 378, 388–90 (1989), and supports municipal liability in the Sixth Circuit. See, e.g., *Wright v. City Euclid,* 962 F.3d at 879–83.

## VIII. CLAIMS FOR RELIEF
### COUNT I – FIRST AMENDMENT RETALIATION (GLOBAL RETALIATION)
42 U.S.C. § 1983 – AGAINST CITY OF MT. WASHINGTON

51. Plaintiff incorporates the preceding paragraphs by reference.

52. Plaintiff engaged in protected conduct, including: filing suit against the City, speaking publicly at the November 14, 2022, Council meeting, reporting corruption to the IRS, and pursuing ongoing litigation and petitioning activity concerning the City's conduct. See *Thaddeus-X v. Blatter*, 175 F.3d at 387–88.

53. In response, the City took adverse actions that would deter a person of ordinary firmness from continuing to engage in that protected activity, including: (a) warrantless entries and destruction of Plaintiff's property in August-September 2022; (b) prolonged,

selective, and unwritten code-enforcement demands directed uniquely at Plaintiff; and (c) deploying armed officers to the April 30, 2025 deposition. See *Bell v. Johnson*, 308 F.3d at 603.

54. Plaintiff's protected conduct was a substantial or motivating factor in these actions, as shown by temporal proximity, the City's withdrawal of demands when Plaintiff invoked equal-treatment principles, the City's failure to impose similar requirements on comparable developers, and the pre-arranged nature of the deposition police presence. See *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998).

55. The City is liable under Monell because these actions resulted from its policies, customs, and deliberate indifference, as set forth above.

56. Plaintiff suffered economic harm, emotional distress, and deprivation of his First Amendment rights as a direct result of the City's retaliation.

**COUNT II – SELECTIVE ENFORCEMENT IN VIOLATION OF DUE PROCESS AND EQUAL PROTECTION**
42 U.S.C. § 1983 – AGAINST CITY OF MT. WASHINGTON

57. Plaintiff incorporates the preceding paragraphs.

58. The City's code enforcement ordinances and permitting requirements are susceptible to standardless enforcement, conferring unbridled discretion on code enforcement officials.

59. City officials exercised this discretion in an arbitrary and discriminatory manner by subjecting Plaintiff to heightened scrutiny, unwritten requirements, and repeated

inspections while failing to impose the same burdens on similarly situated developers, including Fischer Homes.

60. This selective enforcement lacked any rational basis and was motivated by retaliatory animus toward Plaintiff's protected speech and petitioning activity.

61. The City's selective enforcement violated Plaintiff's rights under the Equal Protection Clause and the Due Process Clause, which prohibits arbitrary and capricious enforcement of laws that permits "seizing and holding property, interfering with individual liberty, and depriving parties of their substantive rights without adequate procedural safeguards." *Yick Wo v. Hopkins,* 118 U.S. 356, 373–74 (1886); see also *City of Chicago v. Morales,* 527 U.S. 41, 55 (1999) (void-for-vagueness doctrine protects against arbitrary enforcement).

62. The City is liable under Monell because this selective enforcement resulted from official policy, custom, and deliberate indifference as set forth above.

63. Plaintiff suffered economic damages, project delays, and deprivation of his constitutional rights as a result of this selective enforcement.

**COUNT III – FIFTH AMENDMENT TAKING WITHOUT JUST COMPENSATION**
42 U.S.C. § 1983 – AGAINST CITY OF MT. WASHINGTON

64. Plaintiff incorporates the preceding paragraphs.

65. At the City's request and for its benefit, Plaintiff constructed sewer, stormwater, and road infrastructure using his own funds; the City accepted and operates these improvements as public facilities.

66. The City has refused to compensate Plaintiff for these improvements or provide any reimbursement mechanism, despite deriving ongoing public benefit from their operation.

67. The City's retention and use of these improvements without compensation constitutes a physical taking of private property for public use without just compensation, in violation of the Fifth Amendment, as incorporated by the Fourteenth Amendment, and actionable directly in federal court under *Knick v. Township of Scott,* 588 U.S. at 186–89.

### COUNT IV – EQUAL PROTECTION (CLASS-OF-ONE)
42 U.S.C. § 1983 – AGAINST CITY OF MT. WASHINGTON

68. Plaintiff incorporates the preceding paragraphs.

69. Plaintiff is similarly situated to other residential developers in Mt. Washington, including Fischer Homes, with respect to the type and scale of projects and the applicable building and fire-safety requirements.

70. From 2022 through 2025, the City intentionally treated Plaintiff differently from these similarly situated developers by imposing unwritten firewall and inspection requirements, delaying permits, and subjecting his projects to heightened scrutiny while not imposing the same burdens on others.

71. When Plaintiff demanded proof that Fischer Homes was held to the same firewall standard, the City abandoned its firewall demands against him without explanation, evidencing that these demands were never applied generally or based on a legitimate technical distinction.

72. There was no rational basis for this differential treatment, which was motivated by retaliatory animus toward Plaintiff's speech and petitioning activity, in violation of the Equal Protection Clause. See *Willowbrook v. Olech*, 528 U.S. at 564; *Taylor Acquisitions, L.L.C. v. City of Taylo*r, 313 F. App'x 826, 836–37 (6th Cir. 2009).

## COUNT V – FIRST AMENDMENT RETALIATION (DEPOSITION INTIMIDATION)
### 42 U.S.C. § 1983 – AGAINST CITY OF MT. WASHINGTON

73. Plaintiff incorporates the preceding paragraphs.

74. On April 30, 2025, Plaintiff engaged in protected petitioning activity by taking Coffman's deposition in ongoing litigation against the City.

75. The City responded by deploying three, armed officers to City Hall, including at or near the deposition room, without any legitimate security rationale, in a manner calculated to intimidate Plaintiff and support Coffman.

76. This deployment would deter a person of ordinary firmness from continuing to litigate against the City and to criticize its officials, especially in light of the City's prior course of retaliatory conduct. See *Bell v. Johnson*, 308 F.3d at 603.

77. The City is liable under Monell because the use of officers in this way reflected City policy or custom and occurred with the knowledge of senior officials responsible for security and City facilities. See *Pembaur v. City of Cincinnati*, 475 U.S. at 480–83.

## COUNT VI – MUNICIPAL LIABILITY UNDER MONELL
### 42 U.S.C. § 1983 – AGAINST CITY OF MT. WASHINGTON

78. Plaintiff incorporates the preceding paragraphs.

79. The City of Mt. Washington is liable under *Monell v. Department of Social Services,* 436 U.S. 658 (1978), for the constitutional violations alleged in Counts I through V because such violations resulted from:

(a) Official policies or decisions of final policymakers, including the City Council, Mayor, City Attorney, Police Chief, and Code Enforcement Director, who ratified and adopted retaliatory enforcement practices, approved the deployment of armed officers to intimidate Plaintiff during civil proceedings, and failed to provide compensation for taken infrastructure;

(b) Longstanding customs and practices of selective enforcement against disfavored developers, using police presence to intimidate litigants, and refusing compensation for public infrastructure constructed by private developers; and

(c) Deliberate indifference in training, supervising, and disciplining City personnel regarding: (i) the Fourth Amendment warrant requirement for non-consensual property entries; (ii) the prohibition on retaliatory and selective enforcement based on protected speech; (iii) the improper use of armed officers in civil proceedings; and (iv) the requirement of just compensation for public use of private property.

80. The City had actual or constructive notice of these unconstitutional practices through Plaintiff's repeated complaints, state-court litigation, Council testimony, and the

16

pattern of conduct described herein, yet failed to implement corrective measures, thereby establishing deliberate indifference under *City of Canton v. Harris*, 489 U.S. 378 (1989).

## IX. DAMAGES

81. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered: (a) property-damage and replacement costs exceeding $200,000 for destroyed drain tile, concrete, and other materials; (b) construction delays, carrying costs, and lost income exceeding $150,000; (c) lost market opportunities in the 2023–24 housing cycle exceeding $200,000; (d) uncompensated infrastructure expenditures of approximately $300,000; and (e) emotional distress, reputational harm, and the deprivation of constitutional rights.

82. Plaintiff seeks compensatory damages under § 1983 for his economic losses and for the actual and presumed injury associated with the deprivation of his First, Fourth, Fifth, and Fourteenth Amendment rights. See *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307–08 (1986).

83. Plaintiff also seeks nominal damages for each completed constitutional violation, consistent with *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 800–01 (2021).

84. To the extent permitted by law, Plaintiff seeks punitive damages against any non-municipal defendants who may later be added in their individual capacities for willful and malicious violations of his rights; he does not seek punitive damages from the City itself under § 1983. See *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271 (1981).

## X. JURY DEMAND

85. Plaintiff demands a trial by jury on all issues so triable. U.S. Const. amend. VII; Fed. R. Civ. P. 38.

## XI. PRAYER FOR RELIEF

86. WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant City of Mt. Washington and award:

(a) Compensatory damages in an amount to be determined at trial, but not less than $850,000;

(b) Nominal damages for each constitutional violation;

(c) Restitution for the value of uncompensated infrastructure unjustly retained by the City;

(d) Declaratory relief that Defendant's conduct violated Plaintiff's rights under the First, Fourth, Fifth, and Fourteenth Amendments;

(e) Narrowly tailored injunctive relief prohibiting Defendant and its agents from:

(i) Retaliating against Plaintiff for protected speech and petitioning;

(ii) Entering Plaintiff's property without a warrant, consent, or exigent circumstances;

(iii) Selectively enforcing unwritten or extra-statutory code requirements against Plaintiff;

(iv) Deploying armed officers to Plaintiff's civil proceedings absent a documented, articulable security need;

(f) Reasonable attorneys' fees and costs under 42 U.S.C. § 1988 (if counsel appears) and applicable Kentucky law;

(g) Pre- and post-judgment interest as allowed by law; and

(h) Such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/Dawn L. McCauley*
DAWN L. MCCAULEY
144 West Main Street
Lebanon, Kentucky 40033
(270) 692-0684
lebanonlawyer@cs.com
Attorney for Plaintiff